IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ira Jerome Moore,<br><br>              Petitioner,<br><br>v.<br><br>J. T. Shartle, Warden,<br><br>              Respondent. | No. CV-13-00190-TUC-DCB (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Petitioner Ira Jerome Moore's *pro se* Petitione [sic] for Writ of Habeas Corpus ("Petition") (Doc. 1). Respondent has filed his Return and Answer ("Response") (Doc. 15). Petitioner did not file a reply.

As an initial matter, Respondent noted that although Petitioner named Charles E. Samuels, Jr., the Director of the Bureau of Prisons ("BOP") as the Respondent, this was incorrect. Response (Doc. 15) at 1 n. 1. The proper respondent in an action for habeas corpus is the Petitioner's custodian, who at the time of the Response was Louis W. Winn, Jr. *Id.*; 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36, 124 S.Ct. 2711, 2717, 159 L.Ed.2d 513 (2004). The Court takes judicial notice that Louis W. Winn, Jr. is no longer warden of United States Penitentiary–Tucson ("USP–Tucson"). The Court will

substitute the new Warden of USP–Tucson, J. T. Shartle, as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Macdonald for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1).

I. PROCEDURAL BACKGROUND

Petitioner is currently incarcerated at the Federal Correctional Institution – Williamsburg in Salters, South Carolina. *See* BOP Inmate Locator, *available at* http://www.bop.gov/inmateloc (last visited May 18, 2015). The Court notes that Petitioner originally filed this action in the United States District Court for the District of Columbia, and United States District Court Judge Beryl A. Howell ordered the case transferred here, because Petitioner was incarcerated at USP–Tucson. *See* Order 2/22/2013 (Doc. 2). In light of Petitioner's incarceration at USP–Tucson in Tucson, Arizona at the time of the Petition's filing, this Court retains jurisdiction to consider the Petition. *See Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990) ("jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.") (citation omitted). At the time of filing, Petitioner was serving a 210-month sentence with three (3) years of supervised release for Conspiracy to Commit an Offense Against the United States in violation of 18 U.S.C. § 371; Attempted Bank Robbery in violation of 18 U.S.C. § 2113; and Interstate

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

- 2 -

Transport of a Stolen Vehicle in violation of 18 U.S.C. § 2312.  Response (Doc. 15), Smithers Decl. (Exh. "A"), Public Info. Inmate Data (Attach. "1") at 2.  Petitioner's projected release date is April 23, 2019.  *See* BOP Inmate Locator, *available at* http://www.bop.gov/inmateloc (last visited May 18, 2015).  Petitioner filed a Petione [sic] for Writ of Habeas Corpus on February 22, 2013.  *See* Petition (Doc. 1).

Petitioner challenges a disciplinary conviction that resulted in his loss of good time credits.  Petitioner alleges three grounds by which his Due Process rights were violated, including that (1) the Unit Disciplinary Committee ("UDC") did not provide him with a copy of its disposition to refer his case to the Disciplinary Hearing Officer ("DHO"); (2) the evidence relied on to find that he committed the prohibited act of possessing a weapon was insufficient, because the scotch tape box in which the weapon was allegedly found was not listed on his property form; and (3) BOP's policy that inmates cannot possess Uniform Commercial Code ("UCC") Financing Statements is "absolutely absurd."  Petition (Doc. 1) at 4B, 4C, 4D, 4E.  Petitioner requests that the Court issue its Order directing BOP to dismiss Incident Report Number 2187535.  *Id*. at 4F.

## II.   FACTUAL BACKGROUND

On July 19, 2011 at approximately 11:00 a.m., Special Investigative Service ("SIS") Technician L. Hicks "searched the property belonging to Inmate Moore, Ira, #07866-029[,] . . . [who] is currently housed in the Special Housing Unit [("SHU")]."  Response (Doc. 15), Cerney Decl. (Exh. "B"), Incident Report No. 2187535 (Attach. "1")

at 1; *see also* Petition (Doc. 1), Attach. "10." Technician Hicks searched Petitioner's "property bins which were packed and inventoried when [he] was placed in the SHU . . . [and] discovered a stack of blank UCC Financing Statements (UCC1) . . . [and] opened a scotch tape box and discovered a razor blade hidden inside that had been removed from the handle." *Id.* In light of Petitioner's "having unauthorized UCC documents and possessing a sharpened weapon," Technician Hicks charged him with two prohibited acts: (1) Code 104, Possession of a Weapon, and (2) Code 305, Possession of Anything Not Authorized.[2] *Id.* Later that same day, Lieutenant S. Valencia delivered the incident report to Petitioner. Response (Doc. 15), Exh. "B," Attach. "1" at 1. Lieutenant Valencia also investigated the incident and advised Petitioner of his rights. *Id.*, Exh. "B," Attach. "1" at 2. During Lieutenant Valencia's investigation, Petitioner chose not to make a statement and did not request any witnesses. *Id.* Lieutenant Valencia forwarded the Incident Report to the UDC for further disposition. *Id.*

The following day, June 20, 2011, the UDC conducted its hearing. Response (Doc. 15), Exh. "B," Attach. "1" at 3. At the hearing, Petitioner was advised of his rights, and stated that he understood those rights. *Id.* Petitioner then denied that he had possessed a weapon (Code 104) and admitted that he had the UCC financing statements, but denied that he had possessed anything unauthorized (Code 305). *Id.* Based on the

---

[2] On January 20, 2011, Federal Correctional Complex ("FCC") Allenwood Warden Martinez provided a memorandum to all inmates stating that they were "prohibited from obtaining, possessing, or creating UCC financing statements or similar forms." Response (Doc. 15), Exh. "B," Martinez Memo 1/20/2011 (Attach. "2") at 1. The memorandum further stated that inmates "found to be in possession of these types of documents or information without authorization . . . will be subject to inmate discipline, and [their] case may be referred for possible federal criminal prosecution." *Id.* at 2.

- 4 -

severity of the alleged misconduct, the UDC referred the matter to the DHO for final disposition and recommended sanctions including ninety (90) days disciplinary segregation, loss of commissary and phone privileges and loss of Good Conduct Time ("GCT").  *Id.*  The UDC also provided Petitioner with a Notice of Discipline Hearing Before the DHO and his rights at that hearing.  Response (Doc. 15), Exh. "B," Inmate Rights at Discipline Hr'g (Attach. "3") at 1–2.  Petitioner indicated that he wished to have a staff representative, as well as witnesses at his DHO hearing.  *Id.*, Exh. "B," Attach. "3" at 2.

On August 24, 2011, Petitioner had a DHO hearing before DHO Todd W. Cerney.  *See* Response (Doc. 15), Exh. "B," DHO Report (Attach. "4").  DHO Cerney advised Petitioner of his rights before the DHO, and he indicated that he understood them.  *Id.*, Exh. "B," Attach. "4" at 1.  Petitioner's staff representative J. Bastian appeared at the hearing, and stated that "in his capacity as a Counselor, he knows that there are a lot of razor blades in general population."  *Id.*  Staff Representative Bastian also noted that there were no discrepancies in the discipline process, and that he had met with Petitioner in advance of the hearing to discuss the case.  *Id.*

At the DHO hearing, Petitioner denied the charges against him.  Response (Doc. 15), Exh. "B," Attach. "4" at 1.  In his defense, Petitioner stated that he had never received the UDC report after the UDC hearing.  *Id.*  Petitioner also denied having a razor blade as charged in the Incident Report; however, he noted that "[t]here are razor blades everywhere" and alleged that Officer "Varner never confiscated any tape box from my property[,] [t]here's no tape box listed on my property form."  *Id.*  Petitioner admitted

- 5 -

that he had razor blades in the past and used them to cut papers, and opined that it "seem[ed] like selective prosecution." *Id.* Petitioner admitted to having seen the memorandum from Warden Martinez regarding not possessing UCC Financing Statements, but opined that this prohibition was "contrary to statutory law" and that "[i]nmates have a right to having them." *Id.*

Petitioner did not submit any documentary evidence for consideration at the DHO hearing, but did have three (3) witnesses testify. Response (Doc. 15), Exh. "B," Attach. "4" at 2. The first witness was a fellow inmate, who "stated that UCC forms are on the computer system for inmate use." *Id.* The inmate "further stated that UCC Forms are essential documents and can be used for a number of purposes, all legitimate." *Id.* With regard to single edged razor blades, the inmate stated that "everybody has them." *Id.* Petitioner's second and third witnesses, Correctional Officers Tripp and Barlow, both stated "in their experience working as Correctional Officers, they have seen single edged razor blades as removed from shaving razors many times in general population." *Id.*

In addition to the testimony of the three (3) witnesses, DHO Cerney considered the Incident Report and Investigation; a hand written, July 26, 2011 letter from Petitioner to Captain Gabrielson; Petitioner's Personal Property Record forms dated July 27, 2011; General Instructions and Procedures for Handling Inmate Personal Property Forms dated June 29, 2011; a photocopy of a blank UCC Financing Statement form; and an evidence photograph of the razor. Response (Doc. 15), Exh. "B," Attach. "4" at 2–3. DHO Cerney considered the witness statements and documentary evidence, weighed credibility, and found Petitioner guilty of the prohibited acts of Possession of a Weapon

(Code 104) and Possession of Anything not Authorized (Code 305). *Id.* DHO Cerney imposed sanctions totaling forty-five (45) days Disciplinary Segregation, forty (40) days Disallowance of Good Conduct Time, three (3) months loss of commissary privileges, and three (3) months loss of telephone privileges. *Id.*, Exh. "B," Attach. "4" at 3–4. On September 2, 2011, DHO Cerney signed the DHO report and four days later it was delivered to Petitioner. *Id.*, Exh. "B," Attach. "4" at 4.

On September 15, 2011, Petitioner filed his Regional Administrative Remedy Appeal regarding Incident Report Number 2187535. Petition (Doc. 1) at 4D ¶ 12. On October 26, 2011, Petitioner received a denial of his Regional Appeal. *Id*. at 4D ¶ 12 & Regional Appeal Response (Attach. "15"). On September 18, 2011, Petitioner made a Freedom of Information Act ("FOIA") request for "all information in regard to the alleged Code 104 and 305 IR." *Id.* at 4D ¶ 13, FOIA Request No. 2012-00356 2/3/2012 (Attach. "12"), FOIA Request for Comprehensive Financial Accounting for Incident Report Charges (Attach. "16") & United States Postal Service Track & Confirm (Attach. "17"). On November 15, 2011, Petitioner filed a Central Office Administrative Remedy Appeal to the Director, which was denied on June 22, 2012. Petition (Doc. 1) at 4D ¶ 14 & Central Office Denial (Attach. "18"). Petitioner instituted the current proceeding on February 22, 2013. *See* Petition (Doc. 1).

## III.   ANALYSIS

### A. *Jurisdiction*

"Federal courts are always 'under an independent obligation to examine their own

- 7 -

jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Therefore, a proper characterization of the petition is necessary to a determination of jurisdiction. *Id.*

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence, rather he seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility. As such, Petitioner is challenging the manner, location or condition of the execution of his sentence. *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (section 2241 petition is appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been exhausted); *Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003) ("a prisoner may seek a writ of habeas corpus under 28 U.S.C. § 2241 for 'expungement of a disciplinary finding from his record if expungement is likely to accelerate the prisoner's eligibility for parole'") (quoting *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"); *Weinstein v. U.S. Parole Comm'n*, 902 F.2d

1451, 1452 (9th Cir. 1990) ("The district court had jurisdiction pursuant to 28 U.S.C. § 2241 to review a claim by a federal prisoner challenging a decision of the United States Parole Commission"); *Bostic v. Carlson*, 884 F.2d at 1269 ("Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation without due process of law"). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at USP – Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### B. Exhaustion

#### 1. In General

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55, 115 S.Ct. 2021, 2023–24, 132 L.Ed.2d 46 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original)

- 9 -

(quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Id.* (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).  "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted).  Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis*, *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)).  If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause

and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647–48, 91 L.Ed.2d 397 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

### 2. BOP Administrative Procedures

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b). An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received. 28 C.F.R. § 542.18. Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond with 40 days. *Id.* "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

Here, the Petition reflects that Petitioner has exhausted his administrative remedies, and Respondent does not contest that allegation. *See* Petition (Doc. 1).

- 11 -

Review of the record supports a finding that Petitioner has properly filed appeals regarding the Incident Report at issue in this case. Accordingly, the Court concludes that Petitioner has exhausted his administrative remedies.

### C. Due Process

Petitioner asserts that his due process rights were violated because (1) the Unit Disciplinary Committee ("UDC") did not provide him with a copy of its disposition to refer his case to the Disciplinary Hearing Officer ("DHO"); (2) the evidence relied on to find that he committed the prohibited act of possessing a weapon was insufficient, because the scotch tape box in which the weapon was allegedly found was not listed on his property form; and (3) BOP's policy that inmates cannot possess Uniform Commercial Code ("UCC") Financing Statements is "absolutely absurd." Petition (Doc. 1) at 4B, 4C, 4D, 4E.

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974)). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Indeed, "[t]he standard is 'minimally stringent' only requiring '<u>any</u> evidence in the record that <u>could</u> support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 454–56, 105 S.Ct. at 2774) (emphasis added in *Cato*).

### **1. Alleged Failure of the UDC to Provide Report**

Petitioner asserts that he did not receive a copy of the written UDC report referring the matter to the DHO, and as such his disciplinary hearing was procedurally flawed. *See* Petition (Doc. 1) at 4C ¶ 10. The applicable guidelines are published at 28 C.F.R. § 541.1, *et seq.* (2011). Regarding the disciplinary process, the regulations provide that:

> The discipline process starts when staff witness or reasonably believe that [an inmate] committed a prohibited act. A staff member will issue [the inmate] and incident report describing the incident and the prohibited act(s) [he is] charged with committing. [The inmate] will ordinarily receive the incident report within 24 hours of staff becoming aware of [his] involvement in the incident.

28 C.F.R. § 541.5(a). Once the Incident Report is delivered to an inmate, a BOP staff member will investigate it. 28 C.F.R. § 541.5(b). The investigator will inform the

- 13 -

inmate of the charges and his or her right to remain silent, as well as ask for a statement. *Id.*

Once the investigation is complete the UDC will review the incident report. 28 C.F.R. § 541.7. The inmate may appear before the UDC during its review, make a statement, and present documentary evidence. 28 C.F.R. § 541.7(d) & (e). "The UDC's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.7(e). The UDC may find that the inmate committed the prohibited act charged, did not commit the prohibited act charged, or refer the matter to the DHO for further review. 28 C.F.R. § 541.7(a). If an inmate is charged with a Greatest or High severity prohibited act, the UDC will automatically refer the incident report to the DHO for further review. 28 C.F.R. § 541.7(a)(4).

If the UDC refers an incident report to the DHO, the DHO will conduct a hearing. 28 C.F.R. § 541.8. "The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b). An inmate will receive written notice of the charge(s) against him at least 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c). An inmate is entitled to have a staff representative during the DHO hearing, to appear either in person or electronically, and to make a statement and present documentary evidence and witnesses. 28 C.F.R. § 541.8(d), (e) & (f). Upon completion of the hearing, the DHO will find one of the following: (1) the inmate committed the prohibited act(s) charged in the incident report; (2) the inmate did not commit the prohibited act(s) charged; or (3) refer the incident report back for further investigation, review, and disposition. 28 C.F.R. § 541.8(a). If

the DHO finds that an inmate committed a prohibited act(s) the DHO may impose sanctions, and will provide the inmate a written copy of the DHO's decision. 28 C.F.R. § 541.8(g) & (h).

Here, Petitioner argues procedural error in the UDC's alleged failure to provide him with a report of its disposition. The evidence shows that Lieutenant Valencia delivered a copy of the Incident Report to Petitioner on July 19, 2011 and advised him of his rights. Response (Doc. 15), Exh. "B," Attach. "1" at 1. On July 20, 2011, Petitioner appeared at the UDC hearing, was advised of his rights, and stated that he understood those rights. *Id.*, Exh. "B," Attach. "1" at 3. At that hearing, Petitioner was provided a Notice of Discipline Hearing Before the DHO and his rights at that hearing. *Id.*, Exh. "B," Attach. "3" at 1–2. Petitioner indicated his desire to have a staff representative, as well as witnesses, at his DHO hearing. *Id.*, Exh. "B," Attach. "3" at 2. Petitioner's staff representative testified at the DHO hearing that he had met with Petitioner in advance of the hearing to discuss the case. *Id.*, Exh. "B," Attach. "4" at 1. Additionally, Petitioner was charged with Possession of a Weapon (Code 104), a Greatest severity offense. *Id.*, Exh. "B," Attach. "1" at 1; 28 C.F.R. § 541.3(a) & Table 1.

There is nothing in the record to support that Petitioner's Due Process rights were violated due to the UDC's alleged failure to provide him with a written copy of their decision. As provided by BOP policy, if an inmate is charged with a Greatest severity prohibited act, the UDC will automatically refer the incident report to the DHO for further review. 28 C.F.R. § 541.7(a)(4). Petitioner received notice that the matter would be referred to the DHO, as well as his rights regarding the DHO hearing, when he

- 15 -

appeared at the UDC hearing. Furthermore, Petitioner met with his staff representative prior to the DHO hearing to discuss the case. In light of the charges against Petitioner, the UDC was restricted to referring the matter to the DHO, which it did. Accordingly, Petitioner had written notice of the charges against him, had a staff representative available and present at the DHO hearing, was allowed to present witnesses on his behalf, and received a written copy of the DHO's findings. This is what due process requires in the prison disciplinary context. *See Wolff*, 418 U.S. at 563–72, 94 S.Ct. at 2978–82.

### 2. Sufficiency of the Evidence

Petitioner asserts that the evidence relied on to find that he committed the prohibited act of possessing a weapon was insufficient, because the scotch tape box in which the weapon was allegedly found was not listed on his property form. Petition (Doc. 1) at 4B ¶ 5, 4C, 4D, 4E.

At the DHO hearing, Petitioner stated that Officer Varner "never confiscated any tape box from my property" and that "[t]here's no tape box listed on my property form." Response (Doc. 15), Exh. "B," Attach. "4" at 3. The DHO in making his finding relied on a photograph of a single edged razor blade taken by SIS Technician Hicks; Petitioner's personal property forms on which "no specific 'tape box' was noted, two Inmate Property Record forms cited MOORE with '(1) bin full legal and personal materials[;]'" and the credibility of Officer Hicks, stating that he believed "MOORE possessed the ability to avoid possible punishment by not telling the truth[,] [whereas,] Hicks was known to have gained nothing by falsifying the discovery in this case." *Id.* Upon consideration of the evidence, the DHO concluded that the greater weight of the

- 16 -

evidence supported a finding that Petitioner had committed the prohibited act of Possession of a Weapon (Code 104). *Id.* The Court finds that "some evidence" supports the DHO's findings and "the record is not so devoid of evidence that the findings of the [DHO] were without support or otherwise arbitrary." *Superintendent v. Hill*, 472 U.S. 445, 457, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

### 3. BOP Policy Regarding UCC Financing Statements

Petitioner challenges BOP's policy barring inmates from possessing UCC financing statements. Petition (Doc. 1) at 4B, 4C, 4E. Petitioner alleges that his possession of the UCC financing statements was not unauthorized, because they were issued by the Georgia Superior Court. *Id.* at 4C. Petitioner further alleges, that the January 20, 2011 memorandum from Warden Martinez regarding this policy is "contrary to statutory law" and that "[i]nmates have a right to have them." Response (Doc. 15), Exh. "B," Attach. "4" at 1.

At the DHO hearing, Petitioner admitted to possessing the UCC financing statement, but contested the legality of BOP's policy. *Id.* In this regard, Petitioner is not challenging the due process afforded him during the DHO hearing. "[P]etitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to [28 U.S.C.] § 2241." *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000). Whereas challenges to conditions of confinement must be brought through a civil rights action. *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (citations omitted). As such, "[a] civil rights action is the 'proper remedy' for a prisoner 'who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of

- 17 -

his custody.'" *Herrera v. Sanders*, 2012 WL 424378, *1 (C.D. Cal.) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973)). As such, to the extent Petitioner is challenging BOP's policy barring inmates from possessing UCC financing statements, his proper remedy is through a § 1983 civil rights action. Regarding the BOP disciplinary proceeding, Petitioner received the requisite due process as to the charge of Possession of Anything Not Authorized (Code 305), and by his own admission, sufficient evidence supported the DHO's findings. Accordingly, Petitioner's claim must fail.

### *D. Conclusion*

In light of the foregoing, the Court finds that the due process requirements as delineated by *Wolff* were met in this case. Additionally, the Court finds that the DHO findings were supported by "some evidence" as required by *Hill*. Therefore, the Petitioner's Petition (Doc. 1) shall be denied.

### IV. RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

(1) SUBSTITUTING J.T. Shartle, Warden, as Respondent for Charles E. Samuels, Jr. pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure; and

(2) DENYING Petitioner's Petitione [sic] for Writ of Habeas Corpus (Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-13-190-TUC-DCB**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 26th day of May, 2015.

Honorable Bruce G. Macdonald
United States Magistrate Judge